Robert J. Ontell (RO3295)
ONTELL & ASSOCIATES PLLC
444 Madison Ave., Floor 4
New York, NY 10022
(201) 803-3100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X   Case No. 1:23-cv-2007
MARY-JO VERCILLO,

                    Plaintiff,

            v.   **COMPLAINT**

MEDSIGN INTERNATIONAL CORPORATION,   **DEMAND FOR JURY TRIAL**
THOMAS M. CONROY, PHILIP A. VERRUTO, and
REZA MADANI,

                    Defendant.
---------------------------------------------------------------------X

Plaintiff Mary-Jo Vercillo by her attorneys, Ontell & Associates PLLC, as and for her complaint against Defendants MedSign International Corporation, Thomas M. Conroy, Philip A. Verruto, and Reza Madani alleges:

**PRELIMINARY STATEMENT**

1. Plaintiff initially invested in and was eventually employed by a healthcare startup called MedSign International Corporation.

2. The terms of Plaintiff's employment by MedSign were contained in three separate contracts between the parties, wherein Plaintiff was misclassified as an independent contractor despite all of the indicia of being an employee of MedSign.

3. MedSign failed to compensate Plaintiff pursuant to the requirements of the Fair Labor Standards Act and the New York Labor Law.

1

4. Additionally, MedSign failed to compensate Plaintiff pursuant to the terms of the various contracts between the parties.

## THE PARTIES

5. Plaintiff MARY-JO VERCILLO is an individual residing in New York County, New York ("Vercillo" or "Plaintiff").

6. Upon information and belief, Defendant MEDSIGN INTERNATIONAL CORPORATION is a Delaware corporation with a principal place of business located at 230 Park Avenue, 4th Floor West, Suite 454, New York, New York 10169 and/or 6530 West Rogers Circle, Suite 31, Boca Raton, Florida, 33487 ("MedSign" or "Company").

7. Upon information and belief, Defendant THOMAS M. CONROY is an individual residing in West Palm Beach, Florida ("Defendant Conroy").

8. Upon information and belief, Defendant PHILIP A. VERRUTO is an individual residing in West Palm Beach, Florida ("Defendant Verruto").

9. Upon information and belief, Defendant REZA MADANI is an individual residing in the state of California ("Defendant Madani").

## JURISDICTION AND VENUE

10. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## FACTUAL BACKGROUND

### I. Plaintiff's Background

12. Plaintiff is a graduate of the University of Rhode Island with a Bachelor's degree in biology, chemistry, and Italian.

13. Plaintiff is a graduate of Baruch College/Mt. Sinai School of Medicine with a Master of Business Administration in healthcare management.

14. Plaintiff has forty (40) years of financial and operational expertise in complex healthcare environments, and has worked to streamline the administration of personal in-home care for elders, saving money by identifying unnecessary costs and home care situations that negatively impact the quality of life as one ages.

15. Plaintiff has held positions such as Vice President of Kessler Rehabilitation Corp. and Vice President of American Health Capital, and owns her own Management and Eldercare consulting company.

### II. Plaintiff Investment in Company

16. Defendant MedSign is a telehealth solutions company that designs, develops, and produces communication platforms committed to advancing the way healthcare services are delivered. MedSign's flagship product is Qortex, a patent-pending TV-based telehealth technology that virtually connects hospitals, medical professionals, home care agencies and pharmaceutical companies with their patients providing real-time video, voice and vital sign data access in the comfort and safety of their home 24/7.

17. In or around June 2018, Plaintiff personally invested ten thousand dollars ($10,000.00) in the Company (the "2018 Investment").

18. On or about July 3, 2018, in exchange for the 2018 Investment, the Company issued to Plaintiff a stock certificate in the amount of one hundred thousand (100,000) shares of MedSign common stock.

### III. Parties' Contractual Relationship

19. On or about January 1, 2019, Plaintiff entered into a certain Advisory Board Consulting Agreement with MedSign (the "2019 Agreement"), a true and accurate copy of which is annexed hereto as Exhibit A, whereby Plaintiff was retained by the Company to fulfill two distinct obligations:

(a) To act as a consultant to MedSign, for the purpose of exchanging strategic and business development ideas, with related services to be performed at least one day per quarter at the MedSign headquarters; and

(b) To act as a sitting member of the MedSign Advisory Board, for which Plaintiff would be required to attend quarterly Advisory Board meetings.

20. In exchange for the services to be provided pursuant to the 2019 Agreement, the Company would grant Plaintiff twenty-five thousand (25,000) shares of MedSign common stock on an annual basis, issued in installments of twelve thousand five hundred (12,500) shares.

21. No other compensation was provided for in the 2019 Agreement, but the Company did explicitly agree to reimburse Plaintiff for all expenses incurred in connection with the services performed thereunder, including travel, lodging, and meals.

22.    On or about September 18, 2019, the Company issued to Plaintiff a stock certificate in the amount of 12,500 shares, representing the first installment granted as required in the 2019 Agreement.

23.    In a letter dated September 18, 2019, and signed by Defendant Verruto that accompanied this stock issuance, Plaintiff was promised "an additional 12,500 shares on or before November 30, 2019."

24.    No further shares were issued to Plaintiff thereafter.

25.    On or about August 17, 2020, Plaintiff entered into a certain Initial Independent Consultant Agreement with MedSign (the "2020 Agreement"), a true and accurate copy of which is annexed hereto as Exhibit B, whereby Plaintiff was retained to perform certain consulting business development, management services, and operation for the benefit of Defendants.

26.    Importantly, the 2020 Agreement appointed Plaintiff to the position of Vice President for Client Integration.

27.    As consideration for the services to be rendered by Plaintiff under the 2020 Agreement, the Company would pay a monthly retainer of seven thousand five hundred dollars ($7,500.00) – but to be paid retroactively, only after securing financing of between seven million ($7M) to ten million ($10M) dollars.

28.    No other compensation was provided for in the 2020 Agreement, but the Company did explicitly agree to reimburse Plaintiff for all expenses incurred in connection with the services performed thereunder.

29.    On or about November 11, 2021, Plaintiff entered into a certain Revised Sales Consultant Agreement with MedSign (the "2021 Agreement," together with the 2019 Agreement and 2020 Agreement, the "Agreements"), a true and accurate copy of which is annexed hereto as

Exhibit C, whereby Plaintiff was retained to generate sales for specific systems and equipment to the sole benefit of Defendants.

30. MedSign began paying Plaintiff three thousand dollars ($3,000) a month as a "stipend," commencing in August 2021 and terminating in February 2022.

31. Plaintiff successfully provided her services under the Agreements through March 25, 2022, and never received any notice of breach or other performance complaints.

32. Additionally, Plaintiff incurred approximately $747.60 in expenses on behalf of Defendant MedSign.

33. In a letter dated March 25, 2022 in a letter signed by Defendant Conroy, Defendant MedSign attempted to terminate the 2020 Agreement immediately, despite termination requiring at least sixty (60) days written notice. Exhibit D, para. 2.

34. Plaintiff has not received any further compensation, nor reimbursement of her expenses, from Defendant MedSign.

### IV. Plaintiff's Misclassification as an Independent Contractor and Wage and Hour Allegations

35. Defendants committed the following acts knowingly, intentionally, and willfully.

36. Although the Agreements referred to Plaintiff as an "independent contractor," at all relevant times, Plaintiff has been misclassified as an independent contractor in violation of the Fair Labor Standards Act ("FLSA") and New York State wage laws.

37. Plaintiff alleges that the intentional acts and/or omissions resulting in her misclassification as an independent contractor were determined by, and/or attributable to all Defendants, each acting as officers and/or agents of MedSign, each participating in the determination of policy of those in its service.

38. Defendants directed when, where, and how Plaintiff performed duties on behalf of MedSign.

39. This direction included, but is not limited to, the following:

   a. Plaintiff was regularly required to attend and participated in on site meetings with MedSign client Northwell Health in 2019 and 2020

   b. Plaintiff was regularly required to participate on Zoom meetings, pilot program meetings, and customer service calls with MedSign client ArchCare PACE program from September 2020 through March 2022

   c. Plaintiff was regularly required to participate on Zoom calls with Baruch College graduate students for research projects on behalf of MedSign from October 2020 through October 2021

   d. Plaintiff was regularly required to participate on Zoom calls and pilot program meetings with MedSign client Elder ONE from March 2021 through on or about July 2021.

   e. Plaintiff was regularly required to participate on Zoom Calls with MedSign client Cabrini Certified Home Health Agency

   f. Plaintiff was even required to travel to the home of the Executive Director of the Long Island State Veterans Home parents and Optimus Healthcare for MedSign hardware installation

40. Plaintiff conducted all work on behalf of MedSign using Qortex telemedicine equipment provided by MedSign.

41. As Plaintiff often worked from home, MedSign paid for a portion of Plaintiff's internet access, cable television, and landline telephone bill.

42. The CIO of MedSign, Reza Madani, and the ex-president of MedSign healthcare, Barry Zeman, supervised all Plaintiff work.

43. Plaintiff directly supervised MedSign technicians Yari Aracena and Alex Reyes with regard to hardware installations and customer service calls.

44. The needs of MedSign clients established Plaintiff's work hours, which extended the majority of the time to as many as seven (7) days a week.

45. The 2019 and 2021 Agreement contain non-competes prohibiting Plaintiff from working for competitors

46. Plaintiff devoted one hundred percent (100%) of her time to MedSign work in 2021 through March 2022, and a substantial amount of her time to MedSign work in 2019 and 2020.

47. MedSign set Plaintiff's rate of pay pursuant to the 2019, 2020, and 2021 Agreements.

48. Plaintiff was required by MedSign to attend various training sessions for MedSign's following clients: Northwell Health, ArchCare, ElderONE, and Cabrini.

49. MedSign regularly required the Plaintiff to provide agendas and minutes for ArchCare and Northwell, ElderONE pilots and a proposed Cabrini pilot.

50. MedSign reviewed and approved the work product of Plaintiff, including, but not limited to, the following: documentation instructions, research reports, surveys, and training materials.

51. MedSign required Plaintiff to seek permission for absences from its President and CIO.

52. Plaintiff hired multiple employees to work for MedSign, including, but not limited to two (2) installation technicians and seven (7) call center representatives.

53. MedSign controlled the solicitation and billing of clients on behalf of Plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty)

54. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs number "1" through "53" above, with the same force and effect as if fully set forth herein at length.

55. Defendants owed a fiduciary duty to Plaintiff.

56. Defendants breached their fiduciary duties to the Company and to Plaintiff.

57. By reason of the foregoing, Defendants are liable in an amount to be proved at trial, but not less than an amount exceeding the jurisdictional limits of all lower Courts, along with an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Accounting)

58. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs number "1" through "57" above, with the same force and effect as if fully set forth herein at length.

59. Defendants owed a fiduciary duty to Plaintiff.

60. Defendants are entrusted with a duty to account for Company assets, especially so when they chose to improperly force Plaintiff out of her position in the Company and restricted access to Company books and records, documents, accounts, and operations.

61. Additionally, Plaintiff always was and currently is entitled to inspect the Company's books and records.

62. Despite many written requests to inspect the books and records and for an accounting of Company assets, Defendants continuously refuse to allow Plaintiff to inspect the

books and records of the Company despite plainly having the right to do so as stated in the Agreement as well as having a statutory right to do so under the NY Bus. Corp. L , § 624 and therefore is unable to determine if proper books and records have been maintained and if she is owed additional compensation pursuant to the Agreements.

63. Accordingly, because Plaintiff has no other recourse, and no other adequate remedy at law, Plaintiff is entitled to a contractual and an equitable accounting of all assets of the Company.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Unjust Enrichment)

64. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs number "1" through "63" above, with the same force and effect as if fully set forth herein at length.

65. The conduct alleged herein taken on behalf of Defendants – of both a personal and professional nature – have resulted in Defendants being unjustly enriched at Plaintiff's expense.

66. Defendants' conduct entitles Plaintiffs to an award in the amount by which Defendants have been enriched.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Fraudulent Conveyance)

67. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs number "1" through "66" above, with the same force and effect as if fully set forth herein at length.

68. The conduct of Defendants alleged herein constitutes fraudulent conveyances, entitled Plaintiffs to set aside the conveyances.

69. The conduct of Defendants alleged herein was outrageous and was undertaken by Defendants maliciously, spitefully, intentionally, wantonly, and with an intent and desire to injure Plaintiffs or in reckless disregard of the rights of Plaintiffs, entitling Plaintiffs to an award of punitive damages against Defendants.

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Concealment)**

70. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs number "1" through "69" above, with the same force and effect as if fully set forth herein at length.

71. Through the conduct alleged herein, Defendants have concealed from Plaintiffs information about the Company which Plaintiff is entitled by law and by contract to have.

72. Plaintiffs have no adequate remedy at law.

73. Unless restrained, Defendants will continue to violate the rights of Plaintiff and other investors, current or otherwise.

74. The foregoing conduct entitles Plaintiff to preliminary and permanent injunctive relief, but in the alternative, Plaintiffs are entitled to an award of compensatory damages for losses caused by Defendants' concealment.

### AS AND FOR A SIXTH CAUSE OF ACTION
**(Breach of Contract)**

75. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs number "1" through "74" above, with the same force and effect as if fully set forth herein at length.

76. Plaintiff and Defendants entered into three (3) separate enforceable agreements.

77. Plaintiff has fully performed all of the requirements imposed upon her by the 2019 Agreement, the 2020 Agreement, and the 2021 Agreement.

78. Defendants have breached the Agreement in numerous ways, including, but not limited to, failing to compensate Plaintiff for her services and failing to reimburse her for expenses incurred in connection with and/or while performing the agreed-upon services.

79. Plaintiff was damaged due to Defendants' breach of the 2019 Agreement, the 2020 Agreement, and the 2021 Agreement.

80. By reason of the foregoing, Defendants are liable in an amount to be proved at trial, but not less than an amount exceeding the jurisdictional limits of all lower Courts.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(FLSA Minimum Wage Violations, 29 U.S.C. §§ 201, et seq.)**

81. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs number "1" through "80" above, with the same force and effect as if fully set forth herein at length.

82. At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed, "employee[s]," including Plaintiff.

83. In 2019 through 2021, Defendants knowingly failed to pay Plaintiff the full federal minimum wage for each hour worked.

84. Plaintiff seeks damages in the amount of her unpaid compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**(FLSA Overtime Violations, 29 U.S.C. §§ 201 et seq.)**

85. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs number "1" through "84" above, with the same force and effect as if fully set forth herein at length.

86. Throughout the statute of limitations period covered by these claims, Plaintiff occasionally worked in excess of forty (40) hours per workweek.

87. At all relevant times, Defendants had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay Plaintiff at one and one half times the full federal minimum wage for all work in excess of forty (40) hours per workweek and willfully failing to keep records required by the FLSA and relevant regulations even though the Plaintiff had been entitled to overtime.

Plaintiff seeks damages in the amount of their unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A NINTH CAUSE OF ACTION**
**(New York State Minimum Wage Violations, N.Y. Lab. L. §§ 650 *et seq.*)**

88. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs number "1" through "87" above, with the same force and effect as if fully set forth herein at length.

89. Upon execution of the 2019 Agreement, and at all times thereafter, Defendants employed Plaintiff within the meaning of the NYLL Article 6.

90. Upon execution of the 2019 Agreement, and at all times thereafter, Defendants were an "employer" of Plaintiff within the meaning of the NYLL Article 6.

91. Upon execution of the 2019 Agreement, and at all times thereafter, Plaintiff was employed by Defendants within the meaning of NYLL Article 6.

92. Upon execution of the 2019 Agreement, and at all times thereafter, Plaintiff was an employee within the meaning of NYLL Article 6.

93. Defendants suffered and permitted Plaintiff to work without paying her the wages to which she was entitled pursuant to the NYLL.

94. Defendants knowingly and willfully failed to pay Plaintiff her earned wages.

95. Defendants knowingly and willfully failed to timely pay Plaintiff her earned wages as required under the NYLL.

96. Defendants knowingly and willfully failed to pay Plaintiff the full New York State minimum wage for all hours worked.

97. Defendants' failures to pay Plaintiff wages for all hours that he worked each week constituted outrageous conduct, made knowingly and willfully, or with a reckless indifference to her rights.

98. Defendants have no good faith basis to believe that their conduct was in compliance with New York law.

99. As a result of Defendants' willful violations of the NYLL, Plaintiff incurred harm and loss and is entitled to an award of damages in an amount to be determined at trial, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A TENTH CAUSE OF ACTION**
**(New York State Overtime Violations, N.Y. Lab. L. §§ 650 et seq. N.Y. Comp. Codes R. & Regs. Tit. 12, §§ 146-1.4, 137-1.3)**

100. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs number "1" through "99" above, with the same force and effect as if fully set forth herein at length.

101. It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of 40 hours in any workweek.

102. Defendants willfully, regularly, and repeatedly failed to pay Plaintiff at the required overtime rate of one-and-one-half times the full New York minimum wage for all hours worked in excess of forty (40) hours per workweek.

103. As a result of Defendants' willful and unlawful conduct, Plaintiff is entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees as provided by N.Y. Lab. Law § 663.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION**
**(New York Notice Requirements, N.Y. Lab. L. §§ 195)**

104. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs number "1" through "103" above, with the same force and effect as if fully set forth herein at length.

105. Defendants willfully failed to furnish Plaintiff with a wage notice upon her hiring or at any other time thereafter as required by NYLL § 195(1), in English or in the language identified by Plaintiff as her primary language, which was to contain, among other things, Plaintiff's rate or rates of pay and basis thereof; the regular pay day designated by Defendants as employers in accordance with NYLL § 191; the name of the employer; any "doing business as"

names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and Plaintiff's regular hourly rates of pay and overtime rates of pay.

106. Through their knowing and intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendants have willfully violated NYLL §§ 190 et seq.

107. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover statutory penalties, together with costs and attorneys' fees provided by NYLL § 198(1-b).

### AS AND FOR A TWELFTH CAUSE OF ACTION
**(New York Notice Requirements, N.Y. Lab. L. §§ 198)**

108. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs number "1" through "107" above, with the same force and effect as if fully set forth herein at length.

109. Defendants willfully failed to provide Plaintiff written wage statements with her wages each week as required by NYLL § 195(3), which were to include, among other things, the dates of work covered by each payment of wages; the name, address, and phone number of the employer; the rate or rates of pay and basis thereof; deductions; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular hours worked and the number of overtime hours worked.

110. Plaintiff did not receive required weekly wage statements containing all of the information required by NYLL § 195(3).

111. Through their knowing and intentional failure to provide Plaintiff with wage statements required by the NYLL, Defendants have willfully violated NYLL § 195(3).

112. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover statutory penalties, together with costs and attorneys' fees as provided by NYLL § 198(1-d).

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
(FIFA, New York City Administrative Code §§ 20-929, 20-933(b)(3))

113. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs number "1" through "112" above, with the same force and effect as if fully set forth herein at length.

114. At all relevant times, Defendants were hiring parties under the meaning of FIFA.

115. Although Plaintiff was an employee of MedSign, if this Court finds that Plaintiff was an independent contractor, in the alternative, at all relevant times, Plaintiff was a freelance worker under the meaning of FIFA.

116. Pursuant to § 20-929(a) of the New York City Administrative Code, a hiring party must pay the freelance worker the contracted compensation either "(1) on or before the date such compensation is due under the terms of the contract or (2) if the contract does not specify when the hiring party must pay the contracted compensation or the mechanism by which such date shall be determined, no later than 30 days after the completion of the freelance worker's services under the contract."

117. Defendants have never adequately paid Plaintiff for the work completed under the Agreement.

118. Under § 20-933(b)(3) of the New York City Administrative Code, hiring parties who violate § 20-929 are liable to the freelance worker in the amount of double damages, injunctive relief, and other remedies as may be appropriate.

119. By the foregoing reasons, Defendants are liable to Plaintiff in an amount to be determined at trial, plus attorneys' fees, and any other damages permitted under FIFA.

**CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that the Court enter Judgment against the Defendant as follows:

A. Finding that Defendant breached the Agreements, and award Plaintiff and the Company all damages available by law in an amount to be determined at trial, in an amount exceeding the jurisdictional limits of all lower Courts, plus interest, at the maximum amount permitted by law;

B. Finding that Defendants breached their fiduciary duties to Plaintiff and awarding compensatory, punitive, and all other damages available by law to Plaintiff, in an amount to be determined at trial, in an amount exceeding the jurisdictional limits of all lower Courts, plus interest, at the maximum amount permitted by law;

C. Ordering an accounting of all Company assets from the time that Plaintiff was improperly shut out of the management of the Company;

D. An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

E. An award of damages, according to proof, including, back pay, front pay, compensatory damages, emotional distress damages, and punitive damages, to be paid by Defendants;

F. Penalties available under applicable laws;

G. Costs of action incurred herein, including expert fees;

H. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663 and other applicable statutes;

I. Pre-judgment and post-judgment interest, as provided by law;

J. Double damages pursuant to NYC Admin. Code § 20-933(b)(3) in an amount to be determined by a jury at trial;

K. Statutory damages pursuant to NYC Admin. Code § 20-933(b)(4) in an amount to be determined by a jury at trial

L. Attorneys' fees and expenses, pursuant to NYC Admin. Code § 20-933(b)(1); and

M. Such other and further relief as the Court may deem just and proper.

**[SIGNATURE PAGE TO FOLLOW]**

Dated: New York, NY
March 8, 2023

                                                                    Respectfully Submitted,

/s/   Robert J. Ontell
Robert J. Ontell (RO3295)
**ONTELL & ASSOCIATES PLLC**
444 Madison Ave., Floor 4
New York, NY 10022
(201) 803-3100

*Attorneys for Plaintiff*